UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEAR RIVER BAND OF ROHNERVILLE RANCHERIA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CALIFORNIA DEPARTMENT OF SOCIAL SERVICES, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-01809-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND GRANTING DEFENDANTS' REQUESTS FOR JUDICIAL NOTICE**<br><br>Re: Dkt. Nos. 32, 38 |

Pending before the Court are Defendants' motions to dismiss and requests for judicial notice. Dkt. Nos. 32, 38. For the reasons described below, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motions, and **GRANTS** Defendants' requests for judicial notice.

**I.　BACKGROUND**

On March 13, 2023, Plaintiffs Madison Fisher and Bear River Band of Rohnerville Rancheria Tribe ("the Tribe") filed a lawsuit in Humboldt County Superior Court against the California Department of Social Services ("CDSS"), CDSS Director Kim Johnson, Humboldt County Department of Health and Human Services ("HDHHS"), and HDHHS Director Connie Beck (collectively, "Defendants"). Dkt. No. 1-1. One month later, CDSS removed the case to federal court, asserting federal question jurisdiction, *see* Dkt. No. 1, and on August 14, 2023, Plaintiffs filed a First Amended Complaint ("FAC"). Dkt. No. 23.

Plaintiffs' claims arise out of Defendants' administration of the extended foster care program as applied to Native youth in the Tribe. As relevant here, the Federal Foster Care Program helps to provide out-of-home care for children until they are safely returned home, placed permanently with adoptive families, or placed in other planned arrangements for permanency.

FAC ¶ 17. It also entitles states, territories, and tribes to claim partial federal reimbursement for the cost of providing this care to children who meet federal eligibility criteria. *Id*. A child's eligibility for foster care is determined by the criteria established pursuant to the Aid to Families with Dependent Children program ("AFDC"). Although the Temporary Assistance for Needy Families ("TANF") welfare program eventually replaced AFDC, eligibility for the Federal Foster Care Program is still linked to the eligibility requirements of the AFDC (i.e., "AFDC linkage"). *Id*. ¶ 18. The provision of partial federal reimbursement for foster care under Title IV-E of the Social Security Act is contingent on an AFDC linkage being made, which requires an initial income and resource evaluation for all participants. *Id*. ¶ 19, 23. Determinations of the child's continued eligibility for federal Title IV-E foster care benefits are conducted periodically, but the AFDC linkage requirement is only required *once* per foster care episode. So long as the youth remains in foster care, no redeterminations of the AFDC linkage are required to demonstrate federal Title IV-E eligibility. FAC ¶ 24.

This case concerns the redetermination of AFDC linkages for Native youth *over* 18 continuing in the foster care system. As part of the Fostering Connections to Success and Increasing Adoptions Act of 2008 (P.L. 110-351), Congress amended the Title IV-E program to provide states and tribes an option to extend eligibility for federal foster care to youth between the ages of 18 and 21 (i.e., nonminor dependents ("NMDs")). FAC ¶ 25. California opted into the extended foster care program in 2010. *Id*. ¶ 28. That same year, the U.S. Department of Health and Human Services announced that redeterminations of AFDC linkage would *not* be required for NMDs who continued in extended foster care upon reaching the age of 18. *Id*. ¶ 26. In other words, "[i]f a nonminor dependent was receiving federal or nonfederal foster care prior to age 18 and continued to be in foster care after his/her 18th birthday, the nonminor dependent continues to be eligible for federal or nonfederal foster care without a new eligibility determination." *Id*. ¶ 29.

Pursuant to this federal guidance, CDSS issued All County Letter ("ACL") 11-10 on January 28, 2011 confirming that annual redeterminations of AFDC linkage were not required for nonminors who continued in foster care upon reaching the age of 18. *Id*. ¶ 30. In response to inquiries from California counties, the CDSS subsequently issued ACL 13-91 on November 1,

2

2013, providing guidance on the applicability of the extended foster care laws for Native youth. *See* Dkt. No. 33-1 at 4.  Plaintiffs take issue with one sentence in the seven-page ACL: "For purposes of maintaining Title IV-E funding, *Indian youth must still meet the financial Aid to Families with Dependent Children-Foster Care (AFDC-FC) eligibility requirements as all other NMDs* to receive the AFDC-FC payment."  FAC ¶ 32 (emphasis added).  Plaintiffs allege that because this guidance did not distinguish between the requirements for youth *continuing* in foster care as opposed to those re-entering foster care, it implied that all Native NMDs were subject to redeterminations.  As a result, Plaintiffs maintain that "CDSS, Humboldt County, and Humboldt DHHS regularly conducted redeterminations of eligibility on non-minor youth of the Tribe entering the 18 and Over Program even though they had never left the foster care program."  *Id.* ¶ 33.  This practice allegedly had a "significant and disproportionate impact on American Indian youth" because Defendants allegedly considered the "tribally based financial distributions" that could become available to some Indian youth upon reaching the age of majority to be a disqualifying resource when conducting redeterminations.  *Id.* ¶ 36.  Plaintiffs further allege that Humboldt County's policy or custom was to "dissuade Tribal youth from applying for the 18 and Over Program in the first place based on the County's misguided belief that all American Indian youth receive tribal distributions and the incorrect conclusion that those individuals would need to undergo eligibility redeterminations."  *Id*.  This policy or custom allegedly deprived Tribal youth of benefits that they would have been entitled to receive through extended foster care absent CDSS's improper practice of conducting redeterminations and dissuading youth from applying.

In June 2021, the California Tribal Families Coalition send a letter to CDSS warning that ACL 13-91 had "led county agencies to overly monitor tribal youth in extended foster [care] for eligibility," and asked CDSS to rescind and correct the letter and redress any wrongful loss of benefits that Indian youth might have experienced.  FAC ¶ 40.  On February 15, 2022, CDSS issued ACL 22-16 "remind[ing] foster care placing agencies of the eligibility and redetermination rules for federal foster care from ACL 11-10," and reiterating that "[f]or youth who turn 18 while under an order for foster care placement, no redetermination shall be conducted solely due to the youth turning 18 years old."  But Plaintiffs allege that because ACL 22-16 did not rescind ACL

3

13-91, and because Defendants have undertaken only "nominal efforts" to re-enroll eligible Indian youth and have taken "no steps" to "redress the harm suffered by American Indian youth who have unlawfully lost years of benefits to which they were entitled," the harm has not abated. *Id*. ¶¶ 45–47.  Moreover, Plaintiffs allege that the County "has continued its policy or custom of finding non-minor American Indian youth . . . ineligible for the 18 and Over Program as a result of tribal 'per capita distributions.'" *Id*. ¶ 48.  They allege that Plaintiff Madison Fisher was one such youth.  According to Plaintiffs, Fisher applied for extended foster care benefits when she turned 18, and was originally approved.  However, a few months after moving into a house arranged by Humboldt County, the County "changed its mind unilaterally and stripped Plaintiff Fisher of her eligibility for the 18 and Over Program due to her receipt of tribal distributions, which was disclosed at the time of application." *Id*. ¶ 57.  Plaintiffs allege that the County's wrongful denial of benefits has resulted in harm to the Tribe as well, since it has "stepped in to support those members" through housing, direct monetary payments, and other support. *Id*. ¶ 61.

Based on this conduct, Plaintiffs allege violations of California Government Code section 11135, the Due Process Clause of the Fourteenth Amendment (42 U.S.C. § 1983), and the California Administrative Procedure Act (Gov. Code § 11342.600).  FAC ¶¶ 64–84.  They also request declaratory relief and a writ of mandate. *Id*. ¶¶ 85–95.  Defendants moved to dismiss Plaintiffs' complaint.  Dkt. Nos. 32 ("County MTD"), 38 ("State MTD").  The matter came before the Court for a hearing on December 1, 2023, and is now fully briefed. *See* Dkt. Nos. 40 ("Opp."), 41 ("County Reply"), 42 ("State Reply"), 51 (hearing minutes).

## II.   LEGAL STANDARD

### A.   Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The issue of Article III standing is jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  To meet his burden of establishing standing, a plaintiff must show he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

4

favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016). And where a plaintiff seeks injunctive relief, he must also demonstrate a "real and immediate threat of repeated injury." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III. DISCUSSION

### C. Requests for Judicial Notice

In *Khoja v. Orexigen Therapeutics*, the Ninth Circuit clarified the judicial notice rule and incorporation by reference doctrine. *See* 899 F.3d 988 (9th Cir. 2018). Under Federal Rule of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Accordingly, a court may take "judicial notice of matters of

5

1  public record," but "cannot take judicial notice of disputed facts contained in such public records."
2  *Khoja*, 899 F.3d at 999 (citation and quotations omitted).  The Ninth Circuit has clarified that if a
3  court takes judicial notice of a document, it must specify what facts it judicially noticed from the
4  document.  *Id*. at 999.  Further, "[j]ust because the document itself is susceptible to judicial notice
5  does not mean that every assertion of fact within that document is judicially noticeable for its
6  truth."  *Id*.  As an example, the Ninth Circuit held that for a transcript of a conference call, the
7  court may take judicial notice of the fact that there was a conference call on the specified date, but
8  may not take judicial notice of a fact mentioned in the transcript, because the substance "is subject
9  to varying interpretations, and there is a reasonable dispute as to what the [document] establishes."
10 *Id*. at 999–1000.

Separately, the incorporation by reference doctrine is a judicially created doctrine that allows a court to consider certain documents as though they were part of the complaint itself.  *Id*. at 1002.  This is to prevent plaintiffs from cherry-picking certain portions of documents that support their claims, while omitting portions that weaken their claims.  *Id*.  Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim."  *Khoja*, 899 F.3d at 1002.  However, "the mere mention of the existence of a document is insufficient to incorporate the contents" of a document.  *Id*. at 1002.  And while a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss … it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."  *Id*.

Both the County and State Defendants move the Court to take judicial notice of three documents: ACL 11-10, ACL 13-91, and ACL 22-16.[1]  *See* Dkt. Nos. 33 (County RJN), 34-1 (State RJN).  Because these materials constitute official government documents "the accuracy of which cannot reasonably be questioned," and because they also figure extensively in Plaintiffs' complaint, the Court **GRANTS** Defendants' requests, finding consideration of the three All

---

[1] Though the County's request for judicial notice identifies these three documents as the documents of interest, it attached ACL 12-12 rather than ACL 11-10 as an exhibit.  The Court construes this as an inadvertent error, and does not take judicial notice of ACL 12-12 at this time.

United States District Court
Northern District of California

County Letters appropriate under either the judicial notice or incorporation by reference doctrines.

**D.    Standing**

Both Defendants contend that the Tribe lacks standing, and cannot bring claims under a *parens patriae* theory because Plaintiff has not pled that a "sufficiently substantial" segment of its members have been affected by Defendants' improper benefit denials.  County MTD at 20–21; State MTD at 20–21.[2]  Plaintiffs argue that the while the Tribe can maintain the claims in *parens patriae*, it is sufficient that Plaintiff Fisher has standing for all types of relief sought at this point in the litigation.  Opp. at 8–11.  The Court agrees with Plaintiffs that the Tribe does not need to demonstrate standing to pursue damages separately and in addition to Plaintiff Fisher, but concludes that Plaintiffs lack standing to pursue injunctive relief on the facts as pled.

The Supreme Court has instructed that where there are multiple plaintiffs in a suit, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433 (2017).  The principle – frequently reiterated by the Ninth Circuit – obviates the need to analyze whether each named plaintiff has standing for each form of requested relief if at least *one* plaintiff can properly proceed on each.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977) ("Because of the presence of this plaintiff [with standing], we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit."); *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) ("The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others."); *Poder in Action v. City of Phoenix*, 506 F. Supp. 3d 725, 728 (D. Ariz. 2020) ("The Ninth Circuit has repeatedly stated that it is unnecessary to address the standing of each plaintiff in a multi-plaintiff case, at least where all plaintiffs seek the same form of relief, so long as one of the plaintiffs has standing.").  Defendants' authority is not to the contrary.[3]

---

[2] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

[3] The State Defendants cite *Townley v. Miller* for the proposition that the rule "applies only in cases where the plaintiffs seek injunctive relief."  722 F.3d 1128 (9th Cir. 2013).  It is true that in *Townley* the plaintiffs only sought injunctive relief, and that the Court accordingly did not need to address the standing of "each plaintiff" if it concluded that "one plaintiff [had] standing."  *Id.* at

Since Defendants do not argue that Plaintiff Fisher lacks standing to seek damages, and since the Court does not independently identify any defect with its jurisdiction over Plaintiff Fisher's damages claims, the Court concludes that it need not consider whether the Tribe *also* has standing to pursue damages. At this stage of the litigation, it is enough that Plaintiff Fisher does.[4]

The parties' standing to pursue injunctive relief presents a harder question, however, and the Court ultimately agrees with Defendants that Plaintiffs have not adequately pled sufficient facts to support such standing under Government Code section 11135. To obtain injunctive relief, a plaintiff must show that they suffered or are threatened with a "concrete and particularized" legal harm, coupled with a "sufficient likelihood that [they] will again be wronged in a similar way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The plaintiff must specifically show that the feared harm is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Furthermore, the Supreme Court has repeatedly held that "[past] exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Lyons*, 461 U.S. at 101–104.

The Court finds that the FAC lacks sufficient nonconclusory, factual allegations of any continuing present adverse effects on either Plaintiff Fisher or other NMDs who are Tribal members. Plaintiffs acknowledge that after CDSS issued ACL 22-16 on February 15, 2022, efforts (albeit "nominal" ones) were made to re-enroll American Indian youth who had been erroneously deemed ineligible for federal extended foster care benefits. FAC ¶¶ 45–46. But Plaintiffs do not allege that the County Defendants failed to re-enroll plaintiff Fisher, nor do they allege with any specificity that the County Defendants improperly discontinued any other American Indian youth's federal benefits or dissuaded or counseled any NMDs from participating in the NMD

---

1133. But it does not follow that the rule is inapplicable where a plaintiff *also* seeks damages, and Defendants have not cited any authority that cabins the rule in this manner.

[4] Standing to seek damages is of course distinct from the *availability* of damages against all Defendants: though the State Defendants did not brief the issue fully, they correctly observe that a suit against the State for money damages would implicate immunity bars. State MTD at 16–17.

program after the issuance of ACL 22-16. Other than a conclusory statement that "Humboldt County has continued its policy or custom of finding non-minor American Indian youth, including non-minor Tribal Members, ineligible for the 18 and Over Program as a result of tribal 'per capita distributions'" (¶ 48), there are no particularized allegations of any continuing or present adverse effects on Plaintiffs and no allegations indicating a realistic likelihood that they would again be subject to the County Defendants' alleged discriminatory conduct.[5]  *Iqbal*, 556 U.S. at 678 (a complaint must contain more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible). Without these allegations, Plaintiffs lack standing to bring a claim to enforce Section 11135 because they have failed to adequately plead a case or controversy regarding injunctive relief. *O'Shea*, 414 U.S. at 495–96 (a plaintiff cannot present a present case or controversy regarding injunctive relief where there are no allegations of continuing, present adverse effects); *Lyons*, 461 U.S. at 109 (plaintiff lacked standing to bring an injunctive relief claim because of "the speculative nature of his claim that he will again experience injury as the result of that practice even if continued").

The Court further finds that since Plaintiffs' request for a writ of mandate is essentially the functional equivalent of their prayer for an injunction, the same rationale counsels against permitting Plaintiffs from pursuing this form of relief based on the existing allegations.

As a result, the Court **DENIES** Defendants' motions to dismiss the Tribe as lacking standing to pursue damages, but **GRANTS** the motions to the extent they argue that Plaintiffs lack standing to seek injunctive relief. It also **GRANTS** the County Defendants' motion to dismiss Plaintiffs' request for a writ of mandamus. That said, since Plaintiffs indicated at the hearing that specific factual developments following the filing of their FAC demonstrate that Defendants are still conducting improper redeterminations and dissuading Native NMDs from entering extended foster care based on misapprehensions regarding tribally based financial distributions, the Court

---

[5] The FAC leaves somewhat ambiguous whether Plaintiff Fisher's benefits were denied before or after ACL 22-16 was issued. If they were denied before, Plaintiff has not pointed to a single specific and identifiable instance of improper benefit redeterminations of NMDs since ACL 22-16's issuance. And even if they were denied after, the complaint lacks the type of particularized allegations that would enable the Court to construe this as an event evidencing the threat of imminent repetition rather than simply an isolated incident or even a mistake.

will permit Plaintiffs leave to amend their complaint to add additional allegations concerning the ongoing nature of the unlawful practices alleged.

### A. Mootness

The State Defendants argue that Plaintiffs' case against them is moot, because their issuance of ACL 22-16 "m[ade] clear that, consistent with [] prior guidance, [redeterminations of NMDs continuing in foster care upon reaching the age of majority] are prohibited." State MTD at 16. Plaintiffs allege that a live controversy exists because the supposed remediation was merely partial, and left ACL 13-16 in place. They further allege that as a result, harm against Native NMDs continues. While these allegations are adequate at this stage, further factual development very well may conclusively show that ACL 22-16 fully remediated the alleged harm flowing from the State's issuance of ACL 13-91. If the State brings a mootness challenge at the summary judgment stage, for instance, Plaintiffs will carry the burden of factually demonstrating how ACL 13-91 continues to harm Plaintiffs despite the subsequent guidance provided by ACL 22-16, or at least providing a factual basis for a reasonable expectation that the State may reinstate the prior, allegedly incorrect guidance. *See Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019). For now and on this limited record, however, Plaintiffs adequately articulate a live dispute as to both Defendants.

The Court therefore **DENIES** the State Defendants' motion to dismiss on this ground.

### B. Defendants Kim Johnson and Connie Beck

Defendants argue that Directors Johnson and Beck must be dismissed from the suit because the FAC lacks specific allegations concerning their personal involvement in CDSS and HDHHS's allegedly wrongful conduct. County MTD 18–19; State MTD at 20. The Court concludes that Plaintiffs have pled enough for now.

In so ruling, the Court recognizes that the allegations against Directors Johnson and Beck are thin. However, Plaintiffs have pled that the Directors were "responsible" for the "enforcement, operation and execution of laws" that allegedly resulted in the constitutional violation Plaintiffs experienced, which is what is required. *See Kentucky v. Graham*, 473 U.S. 149, 166 (1985); *see* FAC ¶¶ 8 ("Defendant Kim Johnson is the Director of the California

10

Department of Social Services . . . . Ms. Johnson is responsible for the enforcement, operation, and execution of laws, and the issuance of binding guidance pertaining to the State of California's policies towards the extended foster care program, including the guidance regarding applications for foster care benefits described therein."), 11 ("Defendant Connie Beck is the Director of Defendant Humboldt County's Department of Health and Human Services . . . . Ms. Beck is responsible for the enforcement, operation and execution of laws pertaining to Defendant Humboldt County's administration of Humboldt County's extended foster care program, including the administration of applications for foster care benefits described therein."). While Plaintiffs will need to do more to ultimately establish liability against these Defendants in *either* their individual or official capacities, Defendants insist on a pleading standard that is too exacting at this stage (or one that is simply misplaced, since Plaintiffs do not rely on a respondeat superior theory of liability).

Accordingly, the Court **DENIES** Defendants' motions to dismiss Defendants Johnson and Beck.

C. **Substantive Claims**

i. **Government Code Section 11135**

Having already found that Plaintiffs lack standing to pursue injunctive relief, the Court must **GRANT** Defendants' motions to dismiss Plaintiff's claim for injunctive relief under Section 11135, which prohibits discrimination against individuals on the basis of, among other things, race, ancestry, or ethnic group identification, in or under "any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." Gov. Code § 11135(a).

Given this determination, the Court is not required to address additional arguments concerning the viability of Plaintiff's claims. However, in order to provide prospective guidance to the parties, the Court observes that to the extent Plaintiffs argue that Defendants violate Section 11135 by "broadly identif[ying] American Indian youth as recipients of tribal assets and . . . thus implement[ing] a policy of precluding and dissuading this population from applying for extended foster care benefits," Plaintiffs articulate a plausible theory of liability as to the County, but not the

11

State.[6]  Opp. at 15–16.  The current pleadings do not suggest that the State Defendants played a role in developing or implementing this blanket policy.  *See* FAC ¶ 36 ("[U]pon information and belief, it was Humboldt County and Humboldt DHHS's policy or custom to dissuade Tribal youth from applying . . . .").  In fact, the State Defendants warn against generalizations concerning tribal income in the very policy document with which Plaintiffs take issue, stating that "[t]ribal distributions must [] be reviewed on a case by case basis as criteria and conditions for such distributions will differ."  Dkt. No. 33-1 at 9.  Plaintiffs have not alleged any facts plausibly suggesting that, contrary to their stated policy position recognizing the nuances of tribal distributions, the State Defendants nevertheless conspired with the County to stereotype Native NMDs and dissuade them from applying for extended foster care.

The State Defendants additionally argue that Plaintiff's Section 11135 claim is deficient for another reason: that the statute prohibits discrimination in state-funded programs and activities, but not by state agencies *themselves*.  *See* State Reply at 12–13; Gov. Code § 11135 (prohibiting discrimination under "any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state"); Cal. Code. Regs. Tit. 2, § 11150 (Section 11135's implementing regulations defining "program or activity" as "any project, action or procedure undertaken directly by recipients of State support"; defining "recipients" as "any contractor, local agency, or person, who regularly employs five or more persons and who receives State support" *but specifically not as* "State agencies").  Because this argument was raised for the first time on reply and Plaintiffs have not had a chance to respond to it, the Court declines to evaluate it.  *See Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 930 n.6 (N.D. Cal. 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017).  However, in any amended complaint, Plaintiffs are advised to consider Defendants' arguments concerning

---

[6] Plaintiffs appear to waffle on whether or not to frame this as a disparate impact claim.  While the Court does not read their complaint to allege disparate impact discrimination, their opposition states that they "adequately pleaded disparate impact in violation of Government Code section 11135."  Opp. at 15.  However, if Plaintiffs allege that Defendants "targeted" Native NMDs by making unwarranted assumptions about their receipt of tribal distributions and then, based on those assumptions, dissuading them from applying for extended foster care benefits, their allegations appear to articulate an intentional discrimination theory rather than a disparate impact one.  By definition, a policy "targeting" Native youths is not facially neutral.

the scope of Section 11135 and adjust their allegations as needed.

### ii. Due Process

The County Defendants argue that Plaintiffs' Fourteenth Amendment claim must fail because they do not plead the required elements of a Section 1983 claim based on procedural due process, while Plaintiffs contend that they have done enough to state a viable claim. The Court determines that Plaintiffs have adequately alleged a violation at this stage.

To plead a Section 1983 claim based on procedural due process, a plaintiff must allege three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). The County argues that Plaintiffs have failed to adequately plead the first element – entitlement to a constitutionally protected property interest – because "plaintiffs have not shown an unambiguous [congressional] intent to confer a specific monetary entitlement on the child." County MTD at 32; see also State Reply at 15. It is true that "[t]he Supreme Court has repeatedly recognized that a federal statute can create an enforceable right under § 1983 when it explicitly confers a specific monetary entitlement on an identified beneficiary," and held that "Congress's intent to benefit the plaintiff must be 'unambiguous.'" *California State Foster Parent Ass'n v. Wagner*, 624 F.3d 974, 978–79 (9th Cir. 2010). Foster parents – rather than the foster children themselves – are typically considered the beneficiaries of Title IV-E benefits. However, even the County admits that a NMD like Plaintiff Fisher *may* be considered the identified beneficiary of Title IV-E benefits, "but only under certain limited circumstances" defined by WIC § 11403(b). County Reply at 18. While Plaintiffs could have made more particularized allegations concerning the presence of these circumstances (for example, whether Plaintiff Fisher lived independently in a supervised placement), the Court finds that based on the allegation that Plaintiff moved into housing managed by Humboldt County when her benefits were approved, and construing the facts in light most favorable to Plaintiff, it is plausible that she was receiving "constitutionally protected property interest in the foster care benefits" under Title IV-E for which she was the identified beneficiary. FAC ¶¶ 56, 57, 72. If factual development shows otherwise, however, Defendants may re-raise this argument at the summary judgment stage.

13

The County Defendants, after citing various provisions designed to ensure a fair hearing process for foster youth, also argue that Plaintiffs do not satisfy the third prong. They argue that "the FAC does not allege the County Defendants failed to comply with the procedural requirements for involuntary termination of aid and lacks any factual allegations pertaining to any attempts made by plaintiff Fisher or any other members of the Tribe to avail themselves of this process." County MTD at 33; *see also* State Reply at 16. But that is exactly what Plaintiffs *do* allege: Plaintiff Fisher was unilaterally stripped of her extended foster care benefits without being afforded a hearing or other proceeding. If the thrust of her allegation is that she was never given an opportunity to contest the revocation of her benefits, she cannot be faulted for not pleading that she tried to avail herself of a process that all parties agree exists on paper but that she alleges was not extended to her.

Finally, State Defendants in their moving papers (as opposed to their Reply, where they raised new arguments) essentially just argue that they should be dismissed because they do not conduct redeterminations and could not have violated Plaintiffs' due process rights. State MTD at 19. Plaintiffs oppose their dismissal, arguing that "the extent of the State's role in the underlying conduct is a factual issue." While Plaintiffs' burden of proof linking State Defendants to the alleged misconduct ultimately may well be difficult to meet, the Court finds that Plaintiffs have *pled* that State Defendants' issuance of ACL 13-91 led to constitutional deprivations.

Accordingly, the Court **DENIES** the Defendants' motions to dismiss Plaintiffs' Section 1983 claim.

        **iii.**   **California Administrative Procedures Act**

State Defendants maintain that ACL 13-91 was not subject to the formal rulemaking requirements of the California Administrative Procedures Act ("CAPA") pursuant to an exception, and that Plaintiffs' claim under that statute must be dismissed.[7] State MTD at 19–20. The Court agrees with Plaintiff that their claims are adequately pled at this stage.

CAPA requires that an agency comply with the notice and comment procedures for

---

[7] Though they fail to make this clear in their complaint, Plaintiffs state in their opposition that they raise a violation of CAPA against the State Defendants only. Opp. at 19 n.2.

formalizing a regulation; the failure to do so voids the regulation. Gov. Code § 11340.5, subd. (a); *Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 568 (1996). "A regulation subject to the [C]APA . . . has two principal identifying characteristics. First, the agency must intend its rule to apply generally, rather than in a specific case . . . . Second, the rule must 'implement, interpret, or make specific the law enforced or administered by [the agency.]" *Tidewater*, 14 Cal. 4th at 571. There is an exception to the CAPA requirements, however, where the agency interpretation of a statute is "the only legally tenable interpretation" of that statute. Gov. Code § 11340.9, subd. (f). This has been interpreted to mean that the law "can reasonably be read only one way," such that "the agency's actions or decisions in applying the law are essentially rote, ministerial, or otherwise patently compelled by, or repetitive of, the statute's plain language." *Morning Star Co. v. State Bd. of Equalization*, 38 Cal. 4th 324, 336-37 (2006).

      The parties' arguments about whether or not ACL 13-91 is subject to the "only legally tenable interpretation" exception fold back into the fundamental dispute in this case about whether or not ACL 13-91 fairly interprets the binding federal directive; Plaintiffs' belief that it does not constitutes the entire basis for the State's inclusion in this suit. As such, and in the absence of any authority cited by the State Defendants suggesting that resolution of this issue is required at the pleadings stage, the Court finds it appropriate to defer it pending development of the record. But even if the Court considered the arguments based on the existing allegations and judicially noticed documents, it preliminarily observes that ACL 13-91 – which provides seven pages of guidance on how P.L. 110-351, AB 12 and AB 1712 apply to Native NMDs – appears "expressly intended as a rule of general application to guide [California counties] on the applicability of [extended foster care laws] to a particular type of [youth]," and was not "merely a restatement or summary of how the [agency] had applied the [statutes] in the past." *Tidewater*, 14 Cal. 4th at 572. As such, the notion that the guidance was "essentially rote, ministerial, or otherwise patently compelled by, or repetitive of, the statute's plain language" seems strained.

      For these reasons, the Court **DENIES** the State Defendants' motion to dismiss Plaintiffs'

CAPA claim.[8]

        **iv.**    **Declaratory Relief**

The County Defendants challenge Plaintiffs' request for declaratory relief, arguing that because there is no ongoing controversy regarding Defendants' administration of benefits, declaratory relief is unwarranted. Plaintiffs disagree.

Though the County Defendants' position is clearly that ACL 22-16 resolved the controversy, Plaintiffs allege that the County has continued its policy of unlawfully conducting redeterminations of Native NMDs to the present. While the Court is not persuaded that the allegations about current harm are strong enough to support Plaintiffs' request for injunctive relief, they are sufficient to state an "actual controversy" concerning the County's administration of the extended foster care program. 28 U.S. Code § 2201. Accordingly, the Court **DENIES** the County Defendants' motion to dismiss on this ground.

### D. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Z.A. ex rel. K.A. v. St. Helena Unified Sch. Dist.*, No. C 09-03557 JSW, 2010 WL 370333, at *2 (N.D. Cal. Jan. 25, 2010). "Where there is any doubt as to the relevance of the challenged allegations, courts generally err on the side permitting the allegations to stand . . . ." *See id.* (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 534 (1994)). This is particularly true when the moving party shows no prejudice and when striking the allegations will not streamline the ultimate resolution of the action. Id.

Here, the County Defendants seek to strike a single paragraph in the FAC for alleging that "[i]f not enjoined by the Court, Defendants will continue to deny Tribal members compensation

---

[8] State Defendants refer to Plaintiffs' CAPA claim at various points as "stale" and possibly subject to laches. But because they did not brief the applicable statute of limitations or flesh out their laches arguments, the Court does not consider whether Plaintiffs' claim might be time barred or estopped.

for the lost monetary and in-kind benefits to which they were clearly entitled." FAC ¶ 69; County MTD at 28. The County argues that striking is warranted because the paragraph contains an improper request for damages (which is impermissible under Government Code section 11135), and has maintained that argument even after Plaintiffs clarified in their opposition that "none of the allegations [concerning Section 11135] . . . amount to a request for damages" and rather are included "simply [to] explain the basis for injunctive relief." Opp. at 19. Since the Court finds Plaintiffs' reading of the allegation fair, and because the allegation neither prejudices the Defendant nor influences the ultimate resolution of the action, the Court in its discretion **DENIES** the County's motion to strike. *Orosa v. Therakos, Inc.*, No. C-11-2143 EMC, 2011 WL 3667485, at *7 (N.D. Cal. Aug. 22, 2011) ("Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court.") (citations omitted).

## IV.  CONCLUSION

The Court **GRANTS IN PART and DENIES IN PART** Defendants' motions to dismiss, Dkt. No. 32, 38, and **GRANTS** Defendants' requests for judicial notice, Dkt. Nos. 33, 34-1.

Any amended complaint must be filed no later than 21 days from the date of this order.

The Court further **SETS** a telephonic case management conference on April 30, 2024, at 2:00 p.m, with the case management statement due April 23, 2024. All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy. For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated:  March 11, 2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

17